**STATE OF HAWAII**, Plaintiff–Appellant, v. **LYNN AGUINALDO**, Defendant–Appellee

NO. 13632

(CASE NOS.: WT51, 52: 6/9/88)

NOVEMBER 22, 1989

LUM, C.J., NAKAMURA, PADGETT,
HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY WAKATSUKI, J.

On July 26, 1988, Maui police set up an intoxication control roadblock at Firebreak Road and Halcakala Highway. Defendant–Appellee Lynn Aguinaldo was driving a vehicle which was routinely stopped for a check. When the police officer had an opportunity to observe Aguinaldo, it was apparent that she was not intoxicated. The police officer, as a matter of routine, then asked Aguinaldo to produce her driver's license and no–fault insurance card. When Aguinaldo was unable to do so, the police officer cited her for failure to produce a current driver's license and proof of car insurance.

Aguinaldo moved to suppress all evidence obtained pursuant to her detention at the roadblock. She contends that the demand to produce her driver's license and no–fault insurance card constituted a warrantless search in violation of the Fourth Amendment of the United States Constitution and Article I, § 7 of the Hawaii Constitution.

The trial court granted Aguinaldo's motion to suppress on the grounds that (1) the highway safety statutes relating to intoxication control roadblock programs do not authorize police officers

to enforce any other laws than those relating to driving under the influence of intoxicating substances (DUI) at an intoxication roadblock, and (2) the police had no probable cause to detain and question Aguinaldo once it was determined that she was not violating any DUI laws. The State appeals.

We reverse.

I.

The trial court stated in its conclusion of law (COL) #1 that HRS § 286–162.5 and § 286–162.6,[1] which authorize the police to establish intoxication roadblocks, do "not expressly authorize police officers to enforce other traffic laws at the time of the DUI

---

[1] § 286–162.5 **Authorization to establish intoxication control roadblock programs.** The police departments of the respective counties are authorized to establish and implement intoxication control roadblock programs in accordance with the minimum standards and guidelines provided in section 286–162.6. The chief of police in any county establishing an intoxication control roadblock program pursuant to this section shall specify the procedures to be followed in carrying out the program in rules adopted under chapter 91; provided that the procedures shall be in conformity with and not more intrusive than the standards and guidelines described in section 286–162.6.

§ 286–162.6 **Minimum standards for roadblock procedures.** (a) Every intoxication control roadblock program shall:

(1)  Require either that all motor vehicles approaching roadblocks be stopped, or that certain motor vehicles be stopped by selecting motor vehicles in a specified numerical sequence or pattern.

(2)  Require that roadblocks be located at fixed locations for a maximum three hour period.

(3)  Provide for the following minimum safety precautions at every roadblock:

  (A)  Proper illumination;

  (B)  Off–road or otherwise safe and secure holding areas for vehicles involved in any roadblock stop;

  (C)  Uniformed police officers carrying proper identification;

  (D)  Adequate advance warning of the fact and purpose of the roadblocks, either by sign posts, flares, or other alternative methods; and

roadblock stop." The statement is factually correct, but we disagree with the conclusion drawn therefrom by the trial court. While the roadblock statutes do not expressly authorize police to enforce other traffic laws at DUI roadblock stops, neither do they prohibit it.

A separate section of the highway safety laws, HRS § 286–116 (1985),[2] authorizes "[e]very police officer or law enforcement officer when stopping a vehicle or inspecting a vehicle *for any reason* [to] demand that the driver or owner display the driver's or owner's driver's license and insurance identification card." (Emphasis added.)

"Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one

---

(E) Termination of roadblocks at the discretion of the police officer in charge where traffic congestion would otherwise result.

(4) Provide for a sufficient quantity and visibility of uniformed officers and official vehicles to assure speedy compliance with the purpose of the roadblocks and to move traffic with a minimum of inconvenience.

(b) Nothing in this section shall prohibit the establishment of procedures to make roadblock programs less intrusive than required by the minimum standards provided in this section.

[2] Subsection (a) of HRS § 286–116 reads:

§ 286–116 **License, insurance identification card, possession, exhibition.** (a) Every licensee shall have a valid driver's license in the licensee's immediate possession at all times, and a valid no-fault insurance identification card applicable to the motor vehicle operated as required under section 294–8.5, when operating a motor vehicle, and shall display the same upon demand of a police officer. Every police officer or law enforcement officer when stopping a vehicle or inspecting a vehicle for any reason shall demand that the driver or owner display the driver's or owner's driver's license and insurance identification card. No person charged with violating this section shall be convicted if the person produces in court, or proves from the proper official or other records that the person was the holder of a driver's license or a no-fault identification card and policy conforming to chapter 294 or a certificate of self insurance issued by the commissioner of motor vehicle insurance pursuant to section 294–8.5(b), theretofore issued to the person and valid at the time of the person's arrest.

statute may be called in aid to explain what is doubtful in another." HRS § 1–16 (1985); *see also Zator v. State Farm Mut. Auto. Ins. Co.*, 69 Haw. 594, 597, 752 P.2d 1073, 1075 (1988).

Both the roadblock statutes and HRS § 286–116 pertain to police powers in ensuring highway safety. HRS § 286-116 authorizes the police to demand the production of a driver's license and no–fault insurance card whenever the police stop a vehicle for any reason.

We interpret "for any reason" to mean stopping vehicles for any *valid* reason. *See State v. Powell*, 61 Haw. 316, 320, 603 P.2d 143, 147 (1979). ("The propriety of the search of appellee's automobile, and the subsequent seizures . . . hinges in part upon the validity of the initial stop . . . . If it is ultimately determined that the stop was constitutionally objectionable, the items seized from the vehicle — as fruits of an unlawful 'seizure' — would be the proper subjects of a suppression order.")

When the roadblock statutes are read in conjunction with § 286–116, it is clear that the police are statutorily authorized to enforce the laws requiring drivers to have with them a valid driver's license and a no–fault insurance card by demanding that the same be produced when a stop is validly made.

Aguinaldo argues that if § 286–116 is applied to intoxication roadblock situations, the police could use these roadblocks as pretexts for finding other violations. She also contends that § 286–116 is overbroad, and therefore, constitutionally infirm because it would sanction police demands for production of a driver's license and a no–fault insurance card even when the stop itself is unconstitutional.

Except where First Amendment rights are involved, a statute may not be challenged on the ground that it may be unconstitutionally applied in circumstances other than those before the court. *State v. Manzo*, 58 Haw. 440, 445, 573 P.2d 945, 949 (1977). "A person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that it may conceivably be

applied unconstitutionally to others." *State v. Kaneakua*, 61 Haw. 136, 144, 597 P.2d 590, 594 (1979).

Here, Aguinaldo stipulated, for purposes of this appeal, that the stop of her vehicle pursuant to the intoxication roadblock was constitutionally valid. Consequently, she has no standing to claim that § 286–116 may conceivably be unconstitutional if applied in a situation where the stop is invalid.

## II.

The trial court stated in its COL #2:

The roadblock statutes provide the police with probable cause to conduct only a DUI investigation and does not provide them with the necessary probable cause to investigate any other offenses.

It went on to conclude that without probable cause to investigate other offenses, the continued detention of Aguinaldo and the demand for a driver's license and no–fault card were impermissible.

The statement that the roadblock statutes provide the police with probable cause to conduct a DUI investigation is erroneous. "Probable cause" is often used as a shorthand term to signify the constitutional validity of certain government actions based upon facts and circumstances existing at the time.

"Probable cause . . . exist[s] when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a crime [has been or is] being committed."

*State v. Phillips*, 67 Haw. 535, 539, 696 P.2d 346, 350 (1985) (quoting *State v. Haili*, 63 Haw. 553, 555–56, 632 P.2d 1064, 1065 (1981)). "[P]robable cause . . . in a search situation presupposes a belief resting on reasonably trustworthy information that . . . evidence of that crime is concealed in the places to be searched." *Id.* at 540–41, 696 P.2d at 351.

A statute written in the abstract cannot provide the necessary facts and circumstances to create probable cause, whether for the roadblock stop or any search or seizure thereafter. The absence of probable cause, however, does not render all searches and seizures constitutionally infirm. Our constitutions protect against *unreasonable* searches and seizures. Not every warrantless and nonconsensual search is proscribed. *Nakamoto v. Fasi*, 64 Haw. 17, 24, 635 P.2d 946, 952 (1981).

In *State v. Powell*, 61 Haw. 316, 603 P.2d 143 (1979), this court held that when a driver is validly stopped, it is reasonable for the police officer to request production of the driver's license. *Id.* at 323, 603 P.2d at 148–49.

In *Powell*, this court held that the stop of the defendant's vehicle was valid because the police reasonably believed that the driver may have been violating a traffic law. Here, the police lacked any reasonable belief that Aguinaldo violated any highway safety law. In this case, however, the stop was made pursuant to a valid roadblock stop.

In *State v. Tourtillott*, 289 Or. 845, 618 P.2d 423 (1980), a roadblock was established in which every vehicle was stopped for the purpose of enforcing state game laws. When the defendant was stopped, there was no indication that any game law was being violated. The officer nevertheless requested to see the defendant's driver's license. When the defendant responded that her license had been suspended, she was issued a citation. After determining that the initial stop of the defendant's vehicle was permissible, the Oregon Supreme Court went on to hold that the request to see the defendant's license was also permissible.

The defendant in *Tourtillott* argued, as Aguinaldo does here, that even if the initial stop was valid, any inquiry must relate to the purpose for which the stop was made. In response, the Oregon Supreme Court stated:

> Although the officer's request for identification or a driver's license did not directly relate to the purpose of the

roadblock, it certainly related to the defendant's status as the driver of the car. We hold that if an automobile is validly stopped by a law enforcement officer, the officer may request the operator's driver's license.

*Id.* at 867, 618 P.2d at 435.

We concur with the statement and holding of the Oregon Supreme Court. *See also State v. Coccomo*, 177 N.J. Super. 575, 427 A.2d 131 (1980). Hawaii law requires possession of no-fault insurance identification card in addition to a driver's license for the operation of a motor vehicle.[3] We, therefore, hold that the police has the power and authority to demand from the driver of a vehicle the production of both whenever the vehicle is validly stopped. In this case, Aguinaldo stipulated that the roadblock stop was constitutionally valid, therefore, the demand for production of her driver's license and proof of no-fault insurance was also constitutionally permissible.

The order granting Aguinaldo's motion to suppress is reversed.

*James B. Takayesu*, Deputy Prosecuting Attorney (*Benjamin M. Acob* with him on the briefs) for Plaintiff–Appellant.

*Theodore Chinn*, Deputy Public Defender, (*James Tagupa* and *Richard W. Pollack* on the brief) for Defendant–Appellee.

---

[3] HRS § 286–116(a). See footnote 2, *supra.*